Judge Hise
delivered the opinion of the Court.
On the 21st day of August, 1847, the Board of Trustees of the town of Frankfort, at a regular meeting, as alleged by them, passed the following order:
“ Ordered, That the Marshal, under the direction of the street committee, forthwith remove all obstructions, of what nature or kind soever, in Mero street, commencing at the Penitentiary and extending to the Kentucky river and report to the Board at its next meeting.”
It appears that Wm. T. Herndon was the town Marshal, and as such was’ about to proceed in the execution of this order, and in so doing declared, his intention to Jepthah Dudley, that he would remove the fence enclosing a block of lots owned and possessed by him, on its south side, on the ground assumed, that it obstructed and included a part of Mero street, within Dudley’s enclosure.
Whereupon Dudley, on the third of September, 1847, instituted this suit in chancery against Herndon, the town Marshal, and against L> Sneed, P. Swigert, H. Wingate, J. W. Pruett, 0. Brown, C. G. Graham, and James Piarían, the Trustees of the town of Frankfort, alleging that he was the owner of a block or square of ground composed of eight lots,bounded by his enclosure, and having Washington street on the west, Mero street on the south, and St. Clair street on the east, and the town limits on the north ; that Herndon, the town Marshal, had declared his intention to pull down his fence on Mero street, enclosing his lots on the south side, and that he was so directed and authorized by the *611 Trustees of the town of Frankfort; that Herndon recognized the power and authority of the Trustees to take and change the possession of any real estate in the town ; and that he is unable to defend by force his possession of said lots against Herndon and theTrustees, who are charged to be his accomplices in the design, and therefore appeals to a Court of Chancery for relief, and to have the matters settled peacably, according to law ; that it was the duty of the Trustees, before proceeding by force, to have done the same. He makes Heimdon, Marshal, and P. Swigert, and others, the Trustees, defendants, prays that they be enjoined and restrained from disturbing his possession of said lots, and for general relief.
Demurrer ot defendants to th» - bill and antvret.
Commissions:’» *8 'ort, deore* and app»a’.
The defendants filed a demurrer and answer to the bill, and moved upon notice to dissolve the complainant’s injunction. The Court, before deciding upon the demurrer or motion to dissolve, appointed a commissioner with directions to take testimony upon notice to the parties, and to ascertain by a survey and proof •whether complainant’s enclosure extended into Mero street, and if so, how far, or how much of the public streets Dudley had enclosed within his fence, if any, and to make his report at the ensuing term of the Court.
The commissioner reported the evidence taken by him, and the notes of the survey which had been made under his direction by the County Surveyor, and the cause having been submitted, complainant’s injunction was dissolved and bill dismissed by the Court, and Dudley has appealed to this Court.
It is contended that the bill was properly dismissed, because a Court of equity had no jurisdiction of the cause as presented, and no power to grant the relief sought; that it is a proceeding merely to enjoin and restrain the defendants from committing a tresspass upon the property of the complainant, and that he has not exhibited a case which authorizes the interposition «f x Court of Chancery, because it is not alleged ; nor *612 does it appear that any irreparable injury is anticipated or will be done to his property, or that a Court of law could not furnish ample redress, or that the defendants are not able to make good any damage and injury resulting to the complainant, from the tresspass which they have intended to commit on his property, and that therefore a Court of equity has no right to interfere for the protection of the complainant against the violence and injury to his property apprehended by him, because the defendants are abundantly able to pay all damages accruing to him from any trespasses which may be committed by them.
One having title to land and being in possession, may stie any person setting up claim thereto: (Slat. Law 249.)
The answer to these and like suggestions may be found in the 29th section of the act of 1797, regulating proceedings in equity, (1st Statute Law, 294,) which provides “ that any person having both the legal title to, and the possession of land, may institute a suit against any other person setting up a claim thereto.” Now Dudley, in his bill, says that he purchased these lots in 1813, and that they have, ever since that time, been enclosed with a good and sufficient fence, and occupied by him as his own property, up to the day on which his suit is brought. That Herndon and the Trustees are setting up claim to a part oí complainant’s lots is substantially alleged in the bill, and not denied, but admitted in the answer of the defendants,, who not only set up claim and title to land within the complainant’s enclosure, but have assumed further, the right, by their own exparte orders, and with strong arm to enforce their own claim, and violently deprive the complainant of the enjoyment of his land, which he has had' continually in his possession, as a purchaser, for thirty large odd years, as alleged in his bill.
Herndon, in the answer, admits that he was only prevented from “ removing the obstructions” in Mero street by the complainant’s process, (the injunction.) Now, unless he intended to consider and determine that the southern enclosure to Dudley’s land was an obstruction to Mero street, and therefore to tear it down, the *613 complainant’s injunction could not have interfered with his forcible operations. He was not prevented by that injunction from tearing down any other enclosures or buildings, or removing any other assumed obstructions in or on Mero street, by the very plenary authority which he supposed he had under the order of the Board of Trustees. He was only prohibited by complainant’s process from tearing down complainant’s enclosure ? and as he admits, his operations were thus cramped, of course he means to say that if he had not been restrained by an authority somewhat superior to that of the Board of Trustees, whom he was about to serve, that Dudley’s fence would have been demolished.
Herndon sets up claim on behalf of the Trustees to part of complainant’s lots, and the Trustees assert that part of Mero street to which they claim title, has been included in complainant’s enclosure and possession, and they claim the legal right and title, therefore, to part of complainant’s land, occupied and claimed by him, and to which, if his bill be true, he has the-legal title and possession, and the defendants not only •claim part of the land, but they contend for the right and power to enforce their own claim by violence,
1st. Under and by virtue of their authority as Trustees of the town of Frankfort.
2d. Beeause the legal title to the streets is vested in them: and
3d. Beeause, further, they have ample means and ability to pay all cost and damage resulting to complainant from any trespasses committed by them upon bis property.
Now, upon the first ground assumed, it cannot be admitted that because theTrustees of the town of Frankfort have been vested, by law, with special privileges and powers as a municipal body, or corporation, therefore, that such corporation, by the orders of the muni-pal council, and the executive acts of its agents, can encroach upon or violate private rights, and seize upon or take by foree either the real or personal property of *614 the citizen, or give judgment on their own claims to private estates, and carry them into execution, through the instrumentality of their Marshal.
Though the trustees of Frankfort have the right to keep the streets and alleys open,they have not the right under pretence of doing so, to encroach upon the property o,f the citizen.
The trustees of Frankfort may maintain trespass for injuries done to streets & alleys: (Slot. Law, 294, §7.)
Upon the second ground assumed, we remark, it is true that by the Sth section of the act incorporating the Trustees of the town of Frankfort, (Mete of 1838-’9, page 179,) they have “power and authority to clear the streets, alleys, side-walks and pass-ways in said town of all obstructions.” But by this act they have no authority under the pretext of removing such obstructions in the public streets to tear down the enclosures and take possession,for public use, of the lands and lots of the citizens. The Legislature has not conferred, and could not by law confer such authority upon them, unless in accordance with that provision of the constitution which declares that “noman’s property shall be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him.” In executing the powers given to them by th-eir charter “to clear out and remove obstructions from the public streets, &c.,” they must take care that the obstructions attempted to be removed are in and upon the streets, and are not the enclosures merely of the private grounds of the citizens. If the complainant’s enclosure in fact embraced a portion of what had been Mero street, then, unless the title thereto in him had been ripened and perfected by the lapse of time, they were under no necessity of resorting to violence, but had a plainandpeaceful remedy for redress under the provisions of the 7th section of the act above referred to, which provides that the Trustees “shall have full power and authority to maintain and carry into judgment and execution any action or actions of trespass for any injury done to the streets ^ alleys, &c., and may in like manner maintain and carry into judgment and execution any other appropriate action or actions for the recovery of their property, or damages for the detention, taking, injury, or destruction of the same, and the same process may issue and *615 execution be awarded as are applicable by law to suits by private individuals.”
An injunction! may properly be granted against s corporation to prevent an abuso of its authority: (2 Story's Eq., 928, and 929.)
Upon the third ground assumed, to wit: that complainant had no right, by bill in equity and injunction and restraining order, to impede or prevent the content-plated trespass upon his property and destruction of his enclosure, because complainant has not shown that the injury anticipated would be irreparable, because, as insisted, the Marshal and Trustees are fully able to pay all costand damage resulting to complainant by the commission of such, trespasses, and that complainant has not alleged to the contrary in his bill.
It may be replied that although the defendants may be able to pay any reasonable sum for damages done to complainant’s property, yet it is not so certain that they would be willing to pay unless coerced; and according to a very common but pertinent adage, “an ounce of prevention is worth a pound of cure.”
No serious doubt is entertained upon the question of jurisdiction in this case. In 2d Story’s Equity, page 206, section "927, it is said: “An injunction will be granted against a corporation, to prevent an abuse of •the powers granted to them, to the injury of other persons.” And again, on page 207, section 928: “Formerly, indeed, Courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses, but now there is not the slightest .hesitation, if the acts done or threatened to the property would be ruinous or irreparable, or impair the just enjoyment of the property in future. If, indeed, Courts •of equity did not Interfere in cases of this sort, there would be, as has been truly said, a great failure of justice in the country.” And again, on page 209, section 929: “An injunction will begranted where timber is attempted to be cut down by a trespasser in collusion with the tenant of the land; also, where there is a dispute about the boundaries of estates, and one of the claimants is about to cut down ornamental or timber trees in the disputed territory. In short, it is now *616 granted in all cases of timbers, coals, ores and quarries where the party is a mere trespasser, or when he exceeds the limited rights with which he is clothed.”
But, conceding that this proceeding in equity as against a private person, would fail for want of jurisdiction, because it is not alleged or shown that the anticipated trespass would, if not prevented, produce irreparable injury to complainant’s property, yet, this suit is againsta municipal corporation, and thepower of Courts of equity to prevent, by injunction, corporations from trespassing on private property, cannot be questioned.
The jurisdiction attaches, moreover, upon the ground before assumed, that the complainant has a right to have his legal title quieted, and to have the interruption or disturbance of his peacable possession of the land by defendants, prevented by the interposition of the power of a Court of equity; and it seems that such interposition in this and similar cases would be peculiarly appropriate ; because it appears from the evidence in this cause, if the Trustees and their Marshal were permitted to exercise the power and authority claimed by them to tear down enclosures, because they may form an ex parte decision, that they obstruct the streets and alleys of the town, they may, upon the same pretext, and upon the same reason and ground of authority, tear down the dwellings of the people, and valuable private edifices belonging to the citizens, and if so, then, as it appears from the proof and the notes of the survey a? made by the surveyor and reported by the commissioner in- this case, that there are large brick buildings belonging to some of the citizens, and also numerous enclosed lots, which stand upon and include portions of other and various streets in the town. The Trustees and their Marshal although at present, they may intend only to tear down Dudley’s enclosure as an obstruction of Mero street, may hereafter, if allowed to establish their power by a, single precedent, conclude to tear down the buildings and enclosures of others *617 which, according to their showing, stand upon and include, and consequently obstruct other streets more important than Mero. Even if the present board should exercise this power with moderation and discontinue their operations after having torn down the enclosure, and contracted the dimensions of Dudley’s lots, their successors might not beso moderately disposed, and following the example set them by their predecessors, they might make a similar order authorizing their Marshal under the direction of their street committee* to demolish the brick houses which stand more or less as they may suppose upon the other streets of the town.
If a private citizen take & hr d pusses- io i of a sireet or alter in a town and old it claiming ii a3 his own for kG ycirs, the am-píete title ’* vesied in en. h oilizen, or tho e holding in d F him and if h s riaht is qnestioied may maintu n his bill to quiet his possession.
If the private cit'zens at any time encroach with their buildings and enclosures upon the public streets, the municipal authorities should, in the exercise of proper vigilence, and of their undoubted authority, interpose by the legal means provided in their charter, to prevent such encroachment in due time, and thus preserve for public use, the squares, streets and alleys, of the town, in their original dimensions; but if a private, individual or citizen has been permitted to remain in the continued adverse actual posiessionof publieground, or of a public street, or part of a street, as embraced within his enclosures, or covered by his dwelling ®r his other buildings, for a period of twenty years or more without interruption, such citizen will be vested thereby with the complete title to the ground so actually occupied by him, and a title thus perfected bv time, will be just as available against a municipal corporation as it would be against an individual whose elder title and right of entry may be barred by a continued adverse possession, for twenty years, of bis land; a municipal corporation, or any other artificial body vested with corporate rights and functions have no more right than a natural man to claim the benefit and advantage of the maxim “ nullum tempus occurrit regi.a’
After a possession of fifty year's of land, with'daim of title and ownership even a grant from the State has been presumed. So an adverse actual possession of *618 twenty years will bar the title of the trustees of towns to their streets and alleys, just as effectually as it would bar the superior title of an individual claimant to his land.
There is no-certain or unerring proof in the cause as to the precise position and lines of the streets in Frankfort. There is no approved plat or diagram of the town exhibited in the record, showing its general plan.
In any view presented by the evidence, it is clear that Dudley has been in -the continued adverse possession of .ground enclosed for more than twenty years before this suit was brought, which the defendants claim, and which their officer, by their direction, intended to take possession of forcibly. It is the opinion of this Court that Dudley has a right to have his title and possession quieted as to all the block of ground or group of lots situate between Mero, Washington, and St. Clair streets, and the town limits of which he has had continued adverse possession for twenty years and upwards, even though his possession does embrace and cover a part of all, or either of the surrounding streets, and the extent of this possession should be ascertained by proof. It is clear that the trustees claim to run the north boundary line of Mero street, so as to turn a part of Dudley’s lots into that street, of which he has had possession for more than thirty years. If Dudley’s present enclosure on Mero street has stood for more than twenty years before this suit was brought on its present site, then his title and possession should be quieted as to all the ground which they (the trustees) pretend to claim within that enclosure. If, however, Dudley has moved out his fence on Mero street within twenty years next preceding the institution of this suit, so as to include a part of the said street, the trustees should only. be required to surrender to him so much of the ground, claimed by them as part of said street; as lies within the line which formed the site of the fence which enclosed the lots twenty years before this suit was brought. The proof does not show at *619 what time the present fence on Mero street was built, but it does show that an old worm fence, which enclosed the lots on the side of Mero street at least thirty years ago, included a strip of ground several feet in width, and extending along the entire front of the block of lots, which the defendants claim as being part of the street. To this extent, at least, complainant’s title and possession should be quieted, and his injunction against defendants perpetuated.
Ilewitt for appellant; Harlan for appellees.
Wherefore the decree of the Circuit Courtis reversed and the cause remanded for further proceedings to be had, and for final decree to be rendered in conformity with this opinion.